NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., formerly known as RAMADA FRANCHISE SYSTEMS, INC. a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHRIJI KRUPA, LLC, an Indiana Limited Limited Liability, et al.,<br><br>Defendants. | Civil Action No. 07-2726 (JAG)<br><br>OPINION |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on plaintiff Ramada Worldwide Inc.'s ("Plaintiff" or "RWI") motion for entry of default judgment against defendants Shriji Krupa, LLC ("Shriji") and Mitesh Patel ("M. Patel") (collectively, "Defendants"),[1] pursuant to FED. R. CIV. P. 55(b).  RWI seeks all damages stemming from an alleged premature termination of a license agreement between RWI and Shriji.  RWI also seeks compensatory and treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper, pursuant to Sections 32 and 43(a) of the Lanham Act.

---

[1] Initially, Rajesh Patel ("R. Patel") and Urvashi Patel ("U. Patel") were also defendants in this matter.  On June 10, 2008, RWI filed a Notice of Dismissal, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, dismissing the Complaint as to defendants Rajesh Patel and Urvashi Patel, without prejudice and costs to any party.  (Not. of Dismissal without Prejudice as to Defs. Rajesh Patel and Urvashi Patel (Docket Entry No. 13).)

For the reasons set forth below, this Court shall grant the motion for default judgment.

## I. FACTS

RWI is a provider of guest lodging facility services and one of the largest guest lodging facility franchise systems in the United States. (Compl. ¶ 12.) It has the exclusive right to sublicense the use of various trade names and service marks, logos, and derivations. (Id. ¶ 13.) Through its franchise system, RWI markets, promotes, and provides services to its guest lodging franchisees throughout the United States. (Id. ¶ 17.) RWI allows its franchisees, pursuant to license agreements, to utilize the Ramada Marks[2] and to promote the Ramada brand name. (Id.)

On or about June 6, 2001, RWI entered into a license agreement ("License Agreement") with Shriji for the operation of a 108-room guest lodging facility located at 2550 N. Michigan Street, Plymouth, Indiana, Site No. 12349 (the "Facility"). (Id. ¶ 21.) The License Agreement permitted Shriji to operate a Ramada guest lodging facility and use the Ramada Marks in association with the operation and use of the Facility for a fifteen-year term. (Id. ¶ 22.) M. Patel signed a guaranty (the "Guaranty")[3] which stated that, upon a default under the License Agreement, he would "immediately make each payment and perform or cause to be performed each obligation required of Licensee under the [License] Agreement." (Id. ¶¶ 33, 34.) Pursuant to the terms of the Guaranty, M. Patel also "agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the

---

[2] "RWI has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof . . . as well as the distinctive Ramada® System, which provides hotel services to the public under the Ramada name and certain services to its licensees, including a centralized reservation system, advertising publicity, and training services." (Compl. ¶ 13.)

[3] R. Patel and U. Patel also signed the Guaranty.

License Agreement." (Id. ¶ 34.)

The License Agreement required Shriji to make renovations to the Facility, in order to bring it "into compliance with 'System Standards,' 'Approved Plans,' and/or a 'Punch List;' all of which were defined in or attached to the License Agreement . . . ." (Id. ¶ 23.) RWI had "the unlimited right to conduct unannounced quality assurance ("QA") inspections of the Facility" as well as unlimited reinspections if the Facility initially received a failing score. (Id. ¶ 25.) The License Agreement also required Shriji to achieve and maintain certain scores on these inspections (id. ¶ 23), and to make periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees") (id. ¶ 26). To calculate the amounts of these Recurring Fees, RWI relied on Shriji's monthly disclosures of the preceding month's "gross room revenue earned by Shriji at the Facility . . . ." (Id. ¶ 27.)

The License Agreement provided that RWI may terminate the License Agreement, after providing notice to Shriji,

> for various reasons, including Shriji's (a) failure to pay any amount due RWI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

(Id. ¶ 29.)

On July 9, 2002, Shriji failed RWI's QA inspection of the Facility. (Id. ¶ 37.) On February 24, 2004 and August 11, 2004, Shriji failed additional QA inspections. (Id. ¶¶ 38, 39.) Thereafter, on September 24, 2004, RWI advised Shriji that it was in default of its License Agreement obligations and that if it did not pass the next inspection the Agreement would be

terminated. (Id. ¶ 39.) On December 9, 2004, RWI conducted the QA inspection and Shriji failed. (Id. ¶ 40.) On December 30, 2004, because Shriji continually failed to meet its quality obligations, RWI terminated the License Agreement. (Id.) This termination "precluded Shriji from any further use of the Ramada Marks in or around the Facility" and "any further use of the Ramada Marks to induce the traveling public to use the Facility in any way." (Id. ¶¶ 44, 45.) After the termination of the License Agreement, however, Shriji allegedly "continued to misuse the Ramada Marks despite receiving notification from RWI to cease and desist from the misuse of the Ramada Marks." (Id. ¶ 48.)

## II. LEGAL STANDARD

FED. R. CIV. P. 55(b)(2) provides:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>    (A) conduct an accounting;
>    (B) determine the amount of damages;
>    (C) establish the truth of any allegation by evidence; or
>    (D) investigate any other matter.

"The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." U.S. v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique

Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)).  However, "the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "Following the entry of default, a district court can enter a final judgment without requiring further proof of damages only in limited situations."  KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).  For example, "no evidentiary inquiry is necessary if the claim is for a 'sum certain,'" id., or if the claim is based on "an enforceable liquidated damages clause in a contract," id. at 20.  However, beyond these limited situations,  "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

This Court "has considerable latitude in determining the amount of damages."  Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993).  In determining the amount, a district court may conduct a hearing.  FED. R. CIV. P. 55(b)(2).  However, the court is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir.1989)).  "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  Pope v. United States, 323 U.S. 1, 65 (1944).

### III.  JURISDICTION

Before the entry of default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the

subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

**A. Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over the present case, pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendants, Shriji and M. Patel, are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, RWI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey. (Compl. ¶ 1.) Shriji is a limited liability company organized and existing under the laws of the State of Indiana, with its principal place of business in Plymouth, Indiana. (Id. ¶ 2.) In addition, M. Patel is a citizen of the State of Illinois, residing in Prospect, Illinois.[4] (Id. ¶ 5.)

**B. Personal Jurisdiction**

To ascertain whether or not a court has personal jurisdiction, a federal court sitting in diversity must conduct a two-step analysis. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates Due Process of the Fourteenth Amendment. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

---

[4] This Court also has subject matter jurisdiction as a result of RWI's Lanham Act claim, pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.").

In this forum, the inquiry collapses into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States.  As such, federal law defines the parameters of this Court's in personam jurisdiction.  IMO Indus., Inc., 155 F.3d at 259.  The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

Personal jurisdiction, however, is a right that can be waived by the parties.  Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).  A forum selection clause in a contract is one way to effectuate this waiver.  Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1963).

This Court has personal jurisdiction over Shriji by virtue of a forum selection clause in Section 17.6.3 of the License Agreement, in which Shriji consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."  (Compl. ¶ 9.) This Court has personal jurisdiction over M. Patel by virtue of the Guaranty, which adopts the same forum selection clause included in the License Agreement.  (Compl. ¶ 10.)

"[I]n a federal forum, the enforceability of a forum selection clause is determined by a generally applicable federal law."  Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 201 (3d Cir. 1983), overruled on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S.

495 (1989). This Court must look to federal law in determining whether to enforce the forum selection clause in the Agreement.

The Supreme Court of the United States has held that "[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). This rule reflects the principle that courts should enforce freely negotiated contract terms and give effect to the legitimate expectations of the parties. Id. at 12.

Expanding on this ruling, the Third Circuit has adopted the following three step test:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202 (citing M/S Bremen, 407 U.S. at 12-13). A court may refuse to enforce a forum selection clause if any of the factors have been demonstrated. Id.

In the instant case, Shriji consented to personal jurisdiction in New Jersey by virtue of the forum selection clause in Section 17.6.3 of the License Agreement. M. Patel also consented to personal jurisdiction by signing the Guaranty, which incorporated Section 17.6.3 of the License Agreement by reference. The parties did not present facts that this Court finds indicative of fraud or overreaching, of a strong violation of public policy in this forum, or of an unreasonably inconvenient forum. Because forum selection clauses have been upheld as a valid mechanism by which to waive the right to personal jurisdiction, this Court has personal jurisdiction over Shriji and M. Patel.

## IV. ANALYSIS

A.   **Default Judgment**

Defendants failed to appear, or otherwise plead, in response to the Complaint, which was filed on June 11, 2007 and served on M. Patel on October 30, 2007 and Shriji on November 19, 2007.  (See Executed Summons for Mitesh Patel dated October 30, 2007 (Docket Entry No. 5) and Aff. of Mark A. Di Gesu in Supp. of Mot. for J. By Default Against Defs. Shriji Krupa, LLC and Mitesh Patel, dated October 9, 2008 [hereinafter "Di Gesu Aff."] ¶ 4.)  Defendants failed to respond to the instant motion, despite having been served with the motion on October 10, 2008.  Plaintiff sought the entry of default by the Clerk on July 18, 2008.  The Clerk entered default on July 22, 2008.  This Court finds that default judgment is appropriate, under FED. R. CIV.P.55 (b)(2), on all counts of the Complaint.

B.   **Damages**

Plaintiff requests the following damages: $225,996.32 in actual damages;[5] $50,664.33 in Recurring Fees;[6] $10,865.28 for attorneys' fees and costs;[7] and $22,488.33 in treble damages, pursuant to the Lanham Act.  RWI submitted sufficient evidence to support its calculation of the actual damages, Recurring Fees, and attorneys' fees and costs.  Plaintiff has not submitted,

---

[5] Initially, the total was $375,556.17 but Plaintiff reduced this amount to $225,996.32 based on a present value calculation.  (Aff. of Kelly Krug in Supp. of Mot. for J. By Default Against Defs. Shriji Krupa, LLC and Mitesh Patel, dated October 9, 2008 [hereinafter "Krug Aff."] ¶ 46.)

[6] This amount represents principal plus prejudgment interest calculated through November 3, 2008.  (Krug Aff. ¶ 39-40.)  The interest is calculated based on a contractual rate of 1.5% per month.  (Id. ¶ 40.)

[7] The attorneys' fees total $8,352.60 and the costs total $2,512.68.  (Di Gesu Aff. ¶¶ 12, 14.)  The costs include: filing fees, reproduction expenses, telephone charges, ascertaining the identity and location of the defendants, service of process fees, postage and overnight courier expenses.  (Id. ¶ 14.)

however, sufficient evidence to assure this Court regarding treble damages, pursuant to Section 32 and 43 (a) of the Lanham Act.

> To prevail on a trademark infringement claim under Section 32, a plaintiff must prove that the marks in question are valid and legally protectable, owned by plaintiff, and that defendant's use of them is likely to create confusion concerning the origin of the product or service. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir.1990) . . . To establish a Section 43 claim, a plaintiff must prove that: 1) the defendant has made false or misleading statements as to his own product [or another's]; 2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material; 4) the advertised goods traveled in interstate commerce; and 5) there is a likelihood of injury to the plaintiff in terms of declining sales and a loss of good will. Ditri v. Coldwell Banker, 954 F.2d 869, 872 (3d Cir.1992) . . . Where . . . the infringement is willful, the Lanham Act encourages the imposition of treble damages.

Howard Johnson Int'l., Inc. v. Mac (USA) Trade, Inc., No. 06-5588, 2008 WL 5046834, at *2-3 (D. N.J. Nov. 21, 2008).  While this Court may, in its discretion, award damages, pursuant to the Lanham Act, Plaintiff has failed to provide sufficient support of Shriji's continued misuse during the alleged period of infringement from approximately December 30, 2004 through March 8, 2007.  In another instance, where a court granted a Section 32 and 43(a) claim, the plaintiff's exhibits demonstrated misuse from November 6, 2001 through at least January 22, 2002 by providing photographs and a Post-Termination Obligations Checklist, both taken on January 22, 2002.  Days Inn Worldwide, Inc., v. BFC Mgmt., Inc., 544 F. Supp. 2d 401, 405 (D. N.J. 2008).  In the present matter, Plaintiff provides similar exhibits.  (Compl. Ex. A.).  Plaintiff's Post-Termination Obligations Checklist and two accompanying photographs taken on March 8, 2007, however, demonstrate no misuse.  (Id.)  Plaintiff simply proffers that Shriji continued to misuse the Ramada Marks through March 8, 2007, despite receiving notifications from RWI to cease and desist on December 30, 2004 and June 21, 2005.  ("Krug Aff."¶ 35.)  Plaintiff supplied no indication that Plaintiff ever checked on Defendant's continuing use of the Ramada Marks during

this approximate two year period.  Given the lack of evidence presented, this Court has no way of determining if Defendant's misuse of the marks ceased on an unspecified date during the two year period.  This Court will reserve judgment on the Lanham Act claims based on the paucity of evidence on this point and allow Plaintiff fourteen (14) days to provide support.

## V. CONCLUSION

For the reasons set forth above, this Court shall grant Plaintiff's motion for default judgment on actual damages, Recurring Fees, and attorneys' fees and costs.  This Court shall reserve judgment on the issue of treble damages, pursuant to the Lanham Act.

Date:  May 26, 2009

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.